UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA          : Criminal No. 06-128

v.                                :

LAUREN B. WEINER,                 :

      Defendant.                   :

**FILED**

MAR 24 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

## STATEMENT OF THE OFFENSE

Pursuant to Fed. R. Cr. P. 11, defendant Lauren B. Weiner, by and through her undersigned counsel, and the United States, by and through the United States Attorney for the District of Columbia, agree and stipulate as follows:

In 2005, Lauren B. Weiner ("Weiner") worked at the Democratic Senatorial Campaign Committee ("DSCC") as a research associate. In early July 2005, Weiner was conducting public records searches on Maryland's Lt. Governor Michael S. Steele ("Lt. Gov. Steele"), someone then rumored to be a possible Republican candidate for a U.S. Senate seat from Maryland. Weiner found records regarding Lt. Gov. Steele and, in these records, Lt. Gov. Steele's Social Security number. Weiner spoke with her immediate supervisor, the research director at DSCC ("research director") about how she might use a Social Security number to pull up more information. The research director told Weiner that they could get his financial information and suggested using the Social Security number to "check his credit."

First, Weiner attempted to access a web site offering a credit report from Experian. The web site requested Lt. Gov. Steele's driver's license number, which Weiner did not know. (Weiner then asked the research director what to do; the research director told Weiner to try another site which did not require the driver's license number.) Weiner found the site to

TransUnion, which offers the ability to have consumers order their own credit report. Weiner inputted information as if she were Lt. Gov. Steele; for example, she typed in his name, address, date of birth, Social Security number. Weiner even registered with TransUnion as Lt. Gov. Steele by inventing a password, and answering a "secret question" if she were to forget the password. At the point where the application requested an "email" account, Weiner typed in "gopsteele@yahoo.com." Weiner, in fact, had created this email account by registering the account, "gopsteele@yahoo.com", with Yahoo! from her DSCC computer on July 12, 2005, by completing the required fields with Lt. Gov. Steele's name and address. (Weiner did not tell the research director that she created an email account for Lt. Gov. Steele).

On the screen with the notation, "[Michael Steele,] your credit report is moments away!," Weiner encountered a Terms of Use and Service Agreement, which included a requirement that the customer agree, "not to impersonate another person." Weiner clicked on "Accept." After asking for method of payment (Weiner used the research director's DSCC credit card number which the research director provided), TransUnion presented a screen labeled "Permission Statement & Confirmation." The "Permission Statement" requested "written instructions" in order "to obtain information from your personal credit profile... to display your credit data to you." Weiner clicked on "I Agree." At some point, Weiner sent the research director a "disclaimer" or "terms of use" to the research director, who, not understanding the import of what was requested, told Weiner to "go ahead."

Then, TransUnion presented a series of screens with the heading, "We need to ensure you are really [Michael Steele]." Weiner did not share these screens with the research director or anyone else from the DSCC. Instead, Weiner answered questions knowing that she was

2

impersonating Lt. Gov. Steele in order to obtain his credit report. For example, the screens asked Weiner to choose from alternatives requesting private information, such as the personal address history, year of birth, revolving account numbers or installment account numbers, or employer. Weiner chose "personal address" and correctly entered a house number and zip code of Lt. Gov. Steele's home address which she had found through public records. Weiner chose "former employer," and correctly entered the name of Lt. Gov. Steele's former business. She also had already correctly inputted the year of birth and Social Security number. After receiving correct answers to the questions on these screens, TransUnion provided Weiner with Lt. Gov. Steele's personal credit history report on Weiner's computer. Weiner printed the report and put the copy in her desk. Lt. Gov. Steele did not give Lauren Weiner permission to access his personal credit history report; nor was Weiner authorized to access Lt. Gov. Steele's credit report under any statutory exception.

Later that same day, the research director notified her supervisors at DSCC that Weiner had obtained Lt. Gov. Steele's credit report. The supervisors ordered Weiner, through the research director, to immediately destroy the credit report, which she did the following morning. The next day the supervisors reported to the U.S. Attorney's Office for the District of Columbia that Weiner had obtained Lt. Gov. Steele's credit report. Weiner, and the DSCC, did not use Lt. Gov. Steele's credit report for any financial or political purpose. No economic loss resulted from Weiner's actions. Weiner cooperated with the investigating agency, the Federal Bureau of Investigation (FBI), including by disclosing details of her offense to a special agent with the FBI.

In sum, on July 12, 2005, Weiner intentionally accessed a computer; she obtained from the computer information about Lt. Gov. Steele without his permission; and the information Weiner obtained was a file of a consumer from a consumer reporting agency, that is, TransUnion.

Respectfully submitted,

KENNETH L. WAINSTEIN
United States Attorney
for the District of Columbia

By: _____
VIRGINIA CHEATHAM
Assistant U.S. Attorney
Bar No. 411980
555 4th Street, N.W.
Washington, D.C. 20530
(202) 514-9732

## DEFENDANT'S ACCEPTANCE

I have read every word of this Statement of Offense. Pursuant to Fed. R. Cr. P. 11, after consulting with my attorney, I agree and stipulate to this Statement of Offense, and declare under penalty of perjury that it is true and correct.

Date: 2/15/06           _____
                        Lauren B. Weiner
                        Defendant

I concur with her decision to stipulate to this Statement of Offense.

Date: 3/17/06 (was)     _____
                        Whitney C. Ellerman, Esq.
                        Attorney for the Defendant

4